UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    Criminal No. 08-160 (JRT/FLN)

        Plaintiff,

        v.                                              **REPORT AND**
                                          **RECOMMENDATION**

Dantzler Lement Thomas,

        Defendant.

_____

Andrew R. Winter, Assistant United States Attorney, for the Government.
Douglas Olson, Assistant Federal Defender, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the

Defendant's Motions to Suppress Evidence Obtained as a Result of Search and Seizure [#24] and

to Suppress Statements, Admissions and Answers [#25].  During the hearings on the pre-trial

motions, the Court received testimony from four witnesses on two separate dates.  During the

hearing on June 18, 2008, the Court heard testimony from Officer Jason King of the Minneapolis

Police Department and Terry Bean of the Hennepin County Sheriff's Department.  During the

hearing on June 25, 2008, the Court heard testimony from Officers Geoffrey Toscano and Chris

House of the Minneapolis Police Department.   The Court received four exhibits from the

Government[1] and seven exhibits from the Defendant.[2]  The matter was referred to the undersigned

_____

[1]Gov't Ex. 1   Application for search warrant with supporting affidavit, search warrant,
and search warrant inventory for a duplex residence on 15th Avenue South
in  Minneapolis, Minnesota.
    Gov't Ex. 2   Application for search warrant with supporting affidavit, search warrant,
and search warrant inventory for a apartment residence on 22nd Street East
in  Minneapolis, Minnesota.  Executed on January 3, 2008.
    Gov't Ex. 3   Application for search warrant with supporting affidavit, search warrant,
and search warrant inventory for a apartment residence on 22nd Street East
in  Minneapolis, Minnesota.  Executed on September 12, 2007.

for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons

which follow, this Court recommends that Defendant's motions be denied.

## I.  FINDINGS OF FACT

The Defendant's motions stem from the execution of three search warrants and the events

surrounding the execution of those warrants.  On September 12, 2007, the Defendant was arrested

by Officer House.  Shortly after the arrest, a search warrant was executed on an apartment on 22nd

Street East in Minneapolis, Minnesota.  A shotgun and crack cocaine were recovered from the

apartment during the search.  On January 3, 2008, another search warrant was executed on the same

apartment on 22nd Street East.  During the execution of the warrant, police seized narcotics and

placed the Defendant under arrest.  While under arrest, police officers reported that the Defendant

made threatening statements to them.    On April 30, 2008, a search warrant was executed on a

duplex on 15th Avenue South in Minneapolis, Minnesota.  During the execution of the search

---

Gov't Ex. 4   Taped jailhouse phone call of Dantzler Lamont Thomas.

[2]Def. Ex. 1   Application for search warrant with supporting affidavit, search warrant, and search warrant inventory for a apartment residence on 22nd Street East in  Minneapolis, Minnesota.  Executed on September 24, 2007.

Def. Ex. 2   Photograph of the front of a duplex residence on 15th Avenue South in Minneapolis, Minnesota.

Def. Ex. 3   Photograph of the exterior front door of a duplex residence on 15th Avenue South in Minneapolis, Minnesota.

Def. Ex. 4   Photograph of the interior front door of a duplex residence on 15th Avenue South in Minneapolis, Minnesota.

Def. Ex. 5   Four photographs of the front porch of a duplex residence on 15th Avenue South in Minneapolis, Minnesota.

Def. Ex. 6   Photograph of the rear door and stairwell area of a duplex residence on 15th Avenue South in  Minneapolis, Minnesota.

Def. Ex. 7   Photograph of the rear door of a duplex residence on 15th Avenue South in Minneapolis, Minnesota.

warrant, law enforcement recovered a handgun and crack cocaine from the common area basement of the duplex building.  Pursuant to the same warrant, law enforcement stopped the Defendant in his vehicle and placed him under arrest.  While in transport to the jail, the Defendant made a threat to the safety of any person who would testify against him.

A.      **September 12, 2007**

On September 12, 2007, Officer House prepared an application for a search warrant for an apartment on 22nd Street East in Minneapolis, Minnesota.  At the time of the application for a search warrant, Officer House was a Minneapolis Police Officer assigned to the Community Response Team ("CRT") out of the Third Precinct.

Officer House received information from a Confidential Reliabile Informant ("CRI") that crack cocaine was being sold, manufactured and stored inside of the apartment on 22nd Street East. Officer House had previously worked with the CRI.  The CRI had provided information leading to the recovery of narcotics and arrests of suspects in other cases.  The CRI described the man selling the drugs as a black male in his mid-twenties.   The CRI also described the man as being approximately 5 foot 6 inches with two large braids in his hair.  During the course of Officer House's investigation, he learned the man described by the CRI is the Defendant in this case.  The CRI told Officer House that he had observed the Defendant with narcotics on his person.  The CRI stated that the Defendant carries narcotics in his mouth to sell crack cocaine on the street.  The Defendant carries crack cocaine in his mouth, so if he is stopped by law enforcement, then he can swallow the drugs to avoid detection.  Further, the CRI stated that he/she had observed narcotics in the apartment residence.

Officer House set up surveillance outside the apartment on 22nd Street East.  During the

surveillance, Officer House was contacted by the CRI that the Defendant would be receiving a delivery of crack cocaine.  Officer House observed the Defendant arrive at the apartment building in a vehicle previously described by the CRI, go inside the apartment building, and then come back out to the vehicle.  Officer House and other officers approached the Defendant as he got back into the vehicle.  As law enforcement approached the Defendant, Officer House observed a white substance in the Defendant's mouth.  Based upon his training and the information provided by the CRI, Officer House believed this white substance to be crack cocaine.  Officer House ordered the Defendant to spit out the crack cocaine.  Then the Defendant attempted to run from Officer House and a struggle ensued.  During the struggle, the Defendant made exaggerated swallowing motions.  Once he stopped making swallowing motions, the Defendant complied with law enforcement.

A woman exited the apartment on 22nd Street East.  The woman identified herself as the Defendant's girlfriend.  She invited law enforcement to come in and search the apartment.  Law enforcement "froze" the residence while Officer House prepared a search warrant application.  In the search warrant application, Officer House included all the information contained above.  The warrant was signed and executed that same night.  During the search, law enforcement recovered a quantity of crack cocaine, a quantity of marijuana, a shot gun, and $4,600.00 in U.S. currency.

The Defendant was placed under arrest and brought to the jail.  Officer House testified that the Defendant was placed under arrest at the time that he observed the white substance in the Defendant's mouth.  Officer House testified that the arrest was based upon probable cause for narcotics.

**B.**	**January 3, 2008**

On January 3, 2008, Officer King prepared an application for a search warrant for an

4

apartment on 22nd Street East in Minneapolis, Minnesota.  This was the same apartment that was subject of the warrant executed on September 12, 2007.  At the time of the application for a search warrant, Officer King was a Minneapolis Police Officer assigned to the Community Response Team ("CRT") out of the Third Precinct.

Officer King received information from a CRI about "Shorty" selling drugs from the apartment on 22nd Street East.  Officer King knew "Shorty" was the Defendant.  Officer King learned that the Defendant went by "Shorty" during the execution of a search warrant on the address on September 24, 2007.   In the application, Officer King failed to state that no evidence had been seized during the execution of  the warrant on September 24, 2007.  Officer King did state that a search warrant was executed on September 12, 2007, where a firearm, narcotics, and cash were seized.

In the application, Officer King provided information about the CRI.  The CRI had provided Officer King with information that had lead to the arrest of eight individuals on seven occasions. The CRI had also provided information that lead to the recovery of firearms, narcotics and cash.

Officer King used the CRI to purchase crack cocaine from the Defendant on November 27, 2007.  Officer King observed the CRI make a hand to hand exchange of cash for crack cocaine.  The Defendant transported the narcotics in his mouth.  Officer King met the CRI after the exchange and field tested the substance purchased to confirm that it was crack cocaine.

On December 19, 2007, Officer King observed another hand to hand exchange involving the Defendant.  After the exchange, Officer King approached the other man who engaged in the exchange.  This man confirmed that he purchases crack cocaine from "Shorty."  He stated that he calls "Shorty," then "Shorty" comes down to meet him on the street to make the exchange of

narcotics for cash.

Within 72 hours of the application for the search warrant on January 2, 2008, Officer King had the CRI make another controlled purchase of crack cocaine from the Defendant. Officer King observed the hand to hand exchange and field tested the crack cocaine.

Based on the above information, Officer King applied for a search warrant to search the apartment on 22nd Street East. Officer King requested a nighttime search warrant based on his observation that traffic is heaviest at the apartment after 9:00 p.m. Officer King also requested an unannounced search warrant based upon the shotgun recovered during the September 12, 2007, search. Officer King received a search warrant that authorized an unannounced nighttime search for the apartment on 22nd Street East.

The search warrant was executed during the evening of January 3, 2008. During the search, law enforcement recovered crack cocaine and material used in the packaging of crack cocaine. The Defendant was placed under arrest and brought to the Third Precinct. Officer King attempted to interview the Defendant at the Third Precinct. After being advised of his rights under *Miranda*, the Defendant asked for an attorney and the interview was ended. Then the Defendant was brought to the jail.

Officers Toscano and King transported the Defendant to the jail. During the transport, the Defendant threatened the Officer's safety. The Defendant warned the Officers that he would not have a problem with killing a cop and they should watch out.

## C.    April 30, 2008

On April 30, 2008, Deputy Bean prepared an application for a search warrant for a duplex on 15th Avenue South in Minneapolis, Minnesota. At the time of the application for a search

warrant, Deputy Bean was a Hennepin County Sheriff's Deputy assigned to the Metro Gang Strike Force.

In the application for the search warrant, Deputy Bean indicated that he received information from a CRI that narcotics and handguns were being stored at the duplex residence. The CRI was an individual with knowledge of the illicit drug trafficking trade. The CRI had provided information leading to arrests and the seizure of narcotics, weapons, and cash. Within 72 hours of the application for the search warrant, the CRI had been present in the duplex address and observed an unidentified black male in possession of crack cocaine and a handgun. The CRI described the black male as wearing a black shirt, white shoes and a hoodie. Deputy Bean also indicated that he had conducted surveillance of the duplex and observed the CRI and an unidentified black male, matching the description provided by the CRI, coming and going from the duplex residence. Based upon this information, Deputy Bean received a search warrant for the duplex residence and the detached garage. The search warrant also authorized the search of the unidentified black male wearing a black shirt, white shoes, and a hoodie.

While Deputy Bean was applying for the search warrant, other members of law enforcement were maintaining surveillance on the duplex. After the warrant had been signed, Deputy Bean received information from the CRI that the unidentified black male would be arriving in a white car. Deputy Bean received the updated information from the CRI, who was inside the duplex, via cell phone and text message. Law enforcement observed a man matching the description of the unidentified black male arrive at the duplex in a white car. He went to the trunk to retrieve a white purse and entered the duplex in the same door used by the CRI.

Prior to the execution of the search warrant, Deputy Bean received word from law

7

enforcement officers conducting surveillance of the duplex that the unidentified black male was leaving the residence. Deputy Bean told the law enforcement officer to follow the unidentified black male and executed a traffic stop based upon the search warrant. During the stop, the unidentified black male was identified as the Defendant and searched. The officers found cash and keys on the Defendant. Later, law enforcement learned that these keys opened the duplex. The Defendant was placed under arrest and brought to the Third Precinct.

Since the duplex was an up-down duplex, law enforcement sought confirmation from the CRI that they had a search warrant for the correct unit. The CRI walked out of the duplex and stood under the address for the correct unit. Then, law enforcement text messaged the address number to the CRI to confirm the correct address. At this time, law enforcement did not know that the two exterior front doors lead to a common porch, which then led to two interior front doors that actually entered the individual duplexes. The exterior front door was aligned with the interior front door that accessed the individual duplex that corresponded with the address number above the exterior front door. However, nothing prevented a person from entering the exterior front door for the lower duplex, then using the interior front door for the upper duplex, or vis versa. (*See* Def. Ex. 2-5.)

Before Deputy Bean arrived with the search warrant, the CRI was asked to leave the duplex by a person inside the duplex. After leaving, the CRI informed Deputy Bean that the unidentified black male was in possession of a handgun and crack cocaine when he entered the address earlier.

Law enforcement entered to execute the search warrant. During the execution of the search warrant, a handgun and narcotics were found in the basement stairwell at the back of the duplex residence. This stairwell and the entire basement is shared between the upper and lower duplexes. (*See* Def. Ex. 6-7.)

After the search warrant had been executed, Deputy Bean returned to the Third Precinct to attempt to interview the Defendant.  After being advised of his rights under *Miranda*, the Defendant requested a lawyer.  Then, the Defendant was transported to the jail.  During the transport, the Defendant told law enforcement that he would make sure that any witnesses against him would not make it to the stand to testify against him.

## II.    CONCLUSIONS OF LAW

### A.    Validity of the Search Warrants.

The Defendant challenges the search warrants issued in this case based upon a lack of probable cause on the four corners of the supporting affidavits.  The Defendant challenges the validity of all three warrants executed in this case.

### 1.    The Affidavits in Support of the Search Warrants Contained Sufficient Probable Cause for the Issuance of the Search Warrants.

Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 236).  When determining whether probable cause exists, a court does not evaluate each piece of information independently, but, rather, considers all of the facts for their cumulative meaning.  *United States v. Allen,* 297 F.3d 790, 794 (8th Cir. 2002).  The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband

9

or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004). When information in the application for the search warrant is provided by a confidential informant, the totality of the circumstances must show that the information is sufficiently reliable. *United State v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (citing *Gates*, 462 U.S. at 233). Sufficient reliability may be shown through "corraboration by other evidence, or if the informant has a history of providing reliable information." *Lucca*, 377 F.3d at 933 (citing *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court " 'had a substantial basis for . . . conclud[ing] that probable cause existed.' " *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39.) Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

### a. Warrant Executed on September 12, 2007

The Court concludes that, given the totality of the circumstances described in the affidavits in support of the search warrant executed on September 12, 2007, the information provided in the applications for the search warrant is sufficient for a reasonable person to believe there was a fair probability that narcotics or evidence of narcotics would be found at the apartment on 22nd Street East. The warrant is supported by information provided by a CRI. Prior to the application for this warrant, the CRI had provided information leading to the seizure of narcotics and arrests. The CRI provided Officer House with specific information relating the Defendant and the trafficking of narcotics from this location. Furthermore, Officer House verified much of the information provided

by the CRI through observation of the apartment on 22nd Street East.  The search warrant is also supported by Officer House's arrest of the Defendant for the possession of narcotics.  Based on the totality of the circumstances, sufficient facts supported the determination of probable cause for issuance of the search warrant.

The Defendant argues that his arrest on this date was illegal and the inclusion of the arrest in the search warrant application taints the search warrant.  However, the arrest was not illegal because Officer House had probable cause to believe the Defendant was in possession of narcotics. "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."  *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).  Officer House had information from the CRI that the Defendant carried narcotics in his mouth.  When he approached the Defendant he observed a white substance in the Defendant's mouth.  After Officer House asked the Defendant to show him the substance in his mouth, the Defendant attempted to run and started to make exaggerated swallowing motions.  This information was sufficient for Officer House to come to the belief that the Defendant was in possession of narcotics.  Since the arrest of the Defendant is supported by probable cause, the inclusion of arrest in the search warrant application does not taint the search warrant.

**b.    Warrant Executed on January 3, 2008**

The Court concludes that, given the totality of the circumstances described in the affidavits in support of the search warrant executed on January 3, 2008, the information provided in the applications for the search warrant is sufficient for a reasonable person to believe there was a fair

probability that narcotics or evidence of narcotics would be found at the apartment on 22nd Street East. Again, the warrant is supported by information provided by a CRI with a history of providing reliable information to law enforcement. The CRI provided Officer King with specific information relating the Defendant's possession of narcotics. This information was verified by Officer King by the observation of the Defendant making hand to hand narcotics transactions with the CRI and another person outside the apartment on 22nd Street East. These observations had been made on at least three occasions. On two of those occasions, Officer King was able to actually field test the substance purchased from the Defendant to verify that it was narcotics.

The Defendant contends that there is not sufficient information to link the Defendant to the apartment on 22nd Street East. However, Officer King clearly states in the affidavit that the CRI told him that the Defendant is selling narcotics from the residence. Officer King also observed the Defendant leave the apartment to conduct hand to hand transactions on the street outside the apartment. This information creates a clear nexus between the illegal activity and the apartment that is the subject of the warrant. Based on the totality of the circumstances, sufficient facts supported the determination of probable cause for issuance of the search warrant.

### c.    Warrant Executed on April 30, 2008

The Court concludes that, given the totality of the circumstances described in the affidavits in support of the search warrant executed on April 30, 3008, the information provided in the applications for the search warrants is sufficient for a reasonable person to believe there was a fair probability that narcotics or evidence of narcotics would be found at the duplex on 15th Avenue South or on the Defendant himself. The search warrant is based upon information provided by a CRI. The CRI had previously provided information that led to the seizure of narcotics and arrest

12

of suspects.  The CRI told law enforcement that narcotics were being sold from the duplex on 15th Avenue South.  The CRI described a man who was in possession of crack cocaine and a handgun inside the residence.  Law enforcement set up surveillance on the residence and observed the man described by the CRI coming and going from the apartment.  The CRI's history of reliability, along with independent corroboration of information provided by the CRI, demonstrate that the information that narcotics were in the duplex residence and on the Defendant's person were sufficiently reliable.   Based on the totality of the circumstances, sufficient facts supported the determination of probable cause for issuance of the search warrant for both the apartment residence and the Defendant.

> **2.** **The Good Faith Exception to the Warrant Requirement Applies to the Present Case and All Evidence Seized During the Execution of the Search Warrant is Admissible.**

Even if this Court were to determine that the applications in support of the search warrants did not provide probable cause for the issuance of the search warrants on the residences, law enforcement who executed the search warrants on the residences did so in the good faith belief that the search warrants were supported by probable cause, as they had been issued by a Hennepin County District Court Judge who determined that probable cause existed.  The good-faith exception to the exclusionary rule provides that evidence will not be excluded where police officers reasonably rely on a search warrant issued by a neutral judicial officer, even if that search warrant is later declared invalid.  *See Leon*, 468 U.S. at 925-26.  The officers in this case reasonably relied on search warrants that were issued by a neutral judicial officer; therefore, even if the search warrants in this case were not supported by probable cause, the evidence seized as a result of the execution of the search warrants is still admissible.

**B.**     **Defendant's Challenge to the Search Warrants Under *Franks v. Delaware* Fails Because the Affidavits in Support of the Search Warrant Contained No False Statements and the Challenged Statements Were Not Necessary for a Finding of Probable Cause.**

The Defendant challenges the search warrants issued in this case under *Franks v. Delaware*, 438 U.S. 154 (1978). "Under *Franks* and its progeny, a defendant may challenge a search warrant on the grounds that the probable cause determination relied on an affidavit containing false statements or omissions made knowingly and intentionally or with reckless disregard for the truth." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008) (citing *Franks*, 438 U.S. at 171; *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir.2001)). In order to prevail on a challenge to a warrant affidavit under *Franks*, a defendant must make a substantial preliminary showing that: (1) a false statement, or omission, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the affidavit, and (2) the allegedly false statement, or omission, is necessary to the finding of probable cause. *Franks*, 438 U.S. at 171; *United States v. Humphreys*, 982 F.2d 254, 258 n.2 (8th Cir. 1992) (citing *United States v. Lueth*, 807 F.2d 719, 726 (8th Cir. 1986)). Allegations of deliberate falsehood or reckless disregard must be accompanied by an offer of proof. *Franks*, 438 U.S. at 156. A negligent mistake does not rise to the level of a *Franks* violation. *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995). To determine whether an affiant had a reckless disregard for the truth, courts look to whether the affiant "in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to doubt the accuracy of the information contained therein." *United States v. Clapp*, 46 F.3d 795, 800 (8th Cir. 1995) (citing *United States v. Dorfman*, 542 F.Supp. 345, 369 (N.D. Ill. 1982)).

The Defendant alleges that the search warrant executed on January 3, 2008, contains information and omissions that were intended to mislead the judge signing the warrant. The

Defendant argues that Officer King misled the judge by stating that a search warrant had been executed on the address previously on September 24, 2007, but not stating that the execution of that search warrant turned up no evidence. There is no evidence that Officer King had a reckless disregard for the truth in omitting this fact. Officer King provided ample information from which probable cause was determined. Given the affidavits as a whole, it is apparent that Officer King only included the September 24, 2007, search warrant to establish his familiarity with the Defendant. As there is no showing of a false statement made deliberately, or with reckless disregard for the truth, the Defendant has not met the requirements under the first prong of *Franks*.

The Defendant challenges the April 30, 2008, search warrant on the grounds that it contains omissions. The Defendant argues that Deputy Bean omitted that the CRI is a paid informant with a felony record and a history of crack cocaine use. The Defendant also argues that it was an error for Deputy Bean to omit information relating to the two exterior front doors leading to a common front porch that led to another set of interior front doors. Finally, the Defendant argues that Deputy Bean did not provide sufficient information related to the timing of events in the warrant. While Deputy Bean's affidavit refers to events that occurred within the past 72 hours, the events described in the warrant actually occurred within few hours of the preparation of the affidavits. The Court received no evidence that these omissions were made to deliberately mislead, or with reckless disregard for the truth. As there is no showing of a false statement made deliberately, or with reckless disregard for the truth, the Defendant has not met the requirements under the first prong of *Franks*.

C.    **The Defendant Did Not Have an Expectation of Privacy in the Basement Stairwell Where the Handgun and Drugs Were Found During the Execution of the Search Warrant on April 30, 2008.**

The Defendant argues that the search and seizure of the handgun and crack cocaine from the basement stairwell exceeds the scope of the search warrant for the duplex on 15th Avenue South. The search warrant specified the places to be searched as the duplex and the detached garage associated with the duplex. The search warrant did not list common areas as places to be searched pursuant to the warrant.

The facts of this case are very similar to *United Stated v. McCaster*. 193 F.3d 930 (8th Cir. 1999). In *McCaster*, law enforcement searched a hall closet in a common area at the back of a duplex building. *Id*. at 932. The Court held that McCaster did not possess a legitimate expectation of privacy in a hall closet in a common area of a duplex. *Id*. at 933. In reaching this holding, the Court rejected a generalized expectation of privacy in common areas and required a showing of an expectation of privacy. *Id*. The Defendant could make such a showing by demonstrating "a possessory interest in the things seized or the place searched; . . . [the ability to] exclude others from that place; . . . precautions [taken] to maintain the privacy; [and]. . . a key to the premises." *Id*.

Here, the Defendant has failed to show an expectation of privacy in the back stairwell of the duplex building. The Defendant presented no evidence that he maintained any type of control over the area where the handgun and crack cocaine was found. The facts of this case are not any different than the fact presented in *McCaster*, therefore the Defendant does not have an expectation of privacy in the basement stairwell and the evidence must not be suppressed.

### D.  Statements Made by the Defendant Should Not Be Suppressed.

The Defendant argues that any statements made by him should be suppressed as derivative fruit of illegal arrest made following the execution of illegal search warrants. As set forth above, all of the search warrants executed in this case were legal. Therefore, the Defendant's motion to

16

suppress statements should be denied.

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motions to Suppress Evidence Obtained as a Result of Search and Seizure [#24] and to Suppress Statements, Admissions and Answers [#25] be **DENIED**.


DATED: July 28, 2008                              s/ *Franklin L. Noel*
                                                           FRANKLIN L. NOEL
                                                           United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 11, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 11, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.