UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 08-160 (JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| DANTZLER LEMENT THOMAS, | |
| Defendant. | |

Andrew R. Winter, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Douglas Olson, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

This case is now before the Court on defendant Dantzler Lement Thomas's objections to a Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel. The Magistrate Judge recommended the denial of Thomas's Motion to Suppress Evidence Obtained as a Result of Search and Seizure and his Motion to Suppress Statements, Admissions and Answers. Thomas now objects to those recommendations. The Court has conducted a *de novo* review of Thomas's objections, pursuant to 28 U.S.C. § 636 (b)(1)(C) and Local Rule 72.2(b). For the reasons given below, the Court overrules Thomas's objections, and adopts the Report and Recommendation of the Magistrate Judge.

**BACKGROUND**

Thomas's motions stem from the execution of three search warrants, on September 12, 2007, January 3, 2008, and April 30, 2008. The Magistrate Judge held two hearings concerning those searches, (*see* Docket Nos. 30 and 31), and heard testimony from Officers Jason King, Geoffrey Toscano, and Chris House of the Minneapolis Police Department, and Deputy Terry Bean of the Hennepin County Sheriff's Department. The Magistrate Judge's findings of fact are summarized below.

**I.      SEPTEMBER 12, 2007, SEARCH WARRANT**

On September 12, 2007, Officer House prepared an application for a search warrant for an apartment on 22nd Street East in Minneapolis, Minnesota. (*See* Government Ex. 3.) Officer House had received information from a Confidential Reliable Informant ("CRI") that crack cocaine was being sold, manufactured, and stored inside of the apartment on 22nd Street East ("the 22nd Street Apartment"). Officer House had previously worked with the CRI, and the CRI had provided information leading to the recovery of narcotics and arrests of suspects in other cases. The CRI described a man selling the drugs out of the 22nd Street Apartment, and during the course of Officer House's investigation, he learned that the man described by the CRI was Thomas. The CRI told Officer House that he or she had observed Thomas with narcotics on his person within twenty-four hours of the warrant application, and added that Thomas carries

narcotics in his mouth when he sells crack cocaine on the street.[1]  The CRI also stated "that narcotics have been observed within a front bedroom . . . of the [22nd Street Apartment]."  (Government Ex. 3.)

Officer House set up surveillance outside the 22nd Street Apartment.  During the surveillance, Officer House was contacted by the CRI and informed that Thomas would be conducting a delivery of crack cocaine.  Officer House then saw Thomas arrive at the apartment building in a vehicle previously described by the CRI, go inside the 22nd Street Apartment, and then come back out to the vehicle.  Officer House and other officers approached Thomas as he got back into the vehicle, and Officer House observed a white substance in Thomas's mouth.  Based upon his training and the information provided by the CRI, Officer House believed this white substance to be crack cocaine.  Officer House ordered Thomas to spit it out.  Thomas then attempted to flee and a struggle ensued.  During the struggle, Thomas made exaggerated swallowing motions.  Once he stopped the swallowing motions, Thomas complied with law enforcement.  Officer House testified that Thomas was placed under arrest at the time that he observed the white substance in Thomas's mouth.

Following these events, a woman exited the 22nd Street Apartment.  The woman identified herself as Thomas's girlfriend, and invited law enforcement to come in and search the apartment.  Law enforcement "froze" the residence while Officer House prepared a search warrant application, which included all of the information given above.

---

[1] The CRI indicated that the purpose of Thomas carrying crack cocaine in his mouth was so that if he was stopped by law enforcement, he could swallow the drugs.

The warrant was signed and executed shortly thereafter, and law enforcement recovered a quantity of crack cocaine, a quantity of marijuana, a shotgun, and $4,600.00 in U.S. currency.

## II.   JANUARY 3, 2008, SEARCH WARRANT

On January 3, 2008, Officer King prepared an application for another search warrant for the 22nd Street Apartment. (*See* Government Ex. 2.) Officer King had received information from a CRI about someone named "Shorty" selling drugs from the 22nd Street Apartment. Previously, this CRI had provided Officer King with information leading to the arrests of eight individuals on seven occasions and the recovery of firearms, narcotics, and cash. The CRI had also engaged in several transactions directly with "Shorty."

The warrant application noted that the 22nd Street Apartment had been the site of the September 12 search described above, which netted a firearm, narcotics, and cash. The application also noted that officers had conducted another search at the 22nd Street Apartment on September 24, 2007. During that search Officer King had learned that "Shorty" was an alias used by Thomas.

Officer King used the CRI to purchase crack cocaine from Thomas on November 27, 2007. Officer King observed Thomas and the CRI making a hand-to-hand exchange of cash for crack cocaine. Thomas had transported the narcotics to the exchange in his mouth. Officer King met the CRI after the sale and field-tested the substance purchased to confirm that it was crack cocaine. Officers observed Thomas

leaving the 22nd Street Apartment before the exchange and returning to the apartment afterward.

Later, on December 19, 2007, Officer King observed another hand-to-hand exchange involving Thomas. After the exchange, Officer King approached the other party to the transaction. This man confirmed that when he is interested in buying crack cocaine, he calls "Shorty," who then meets him on the street to exchange narcotics for cash. Following the December 19 exchange, officers observed Thomas returning to the 22nd Street Apartment.

On January 2, 2008, Officer King directed the CRI to make another controlled purchase of crack cocaine from Thomas. Officer King observed the two men making a hand-to-hand exchange and then field-tested the substance to confirm it was crack cocaine. As with the first controlled purchase, officers observed Thomas leaving the 22nd Street Apartment before the exchange and returning to the apartment afterward. On the basis of this information, Officer King obtained a search warrant that authorized an unannounced evening search for the 22nd Street Apartment.

The search warrant was executed during the evening of January 3, 2008. During the search, law enforcement recovered crack cocaine, as well as materials used in the packaging of crack cocaine. Thomas was placed under arrest and brought to the Third Precinct, where Officer King attempted to interview him. After being advised of his *Miranda* rights, Thomas asked for an attorney and the interview was halted. While Thomas was being transported to jail, he warned the transporting officers that he would not have a problem with killing a cop and that they should watch out.

### III.     APRIL 30, 2008, SEARCH WARRANT

On April 30, 2008, Deputy Bean prepared an application for a search warrant for a duplex on 15th Avenue South in Minneapolis, Minnesota ("the 15th Avenue Duplex"). (*See* Government Ex. 1.)  Thomas's objections to the execution of that warrant are based in large part on a close reading of the affidavit submitted by Deputy Bean with the warrant application.  The relevant portions of that affidavit read as follows:

> Your affiant has received information from a Confidential Reliable Informant (CRI) herein, that narcotics and handguns are being stored, packaged and distributed from 2437 15th Avenue South, Minneapolis.
>
> This CRI has broad knowledge of narcotics and illicit drug trafficking trade.  This CRI has provided information several times to your affiant that has been used to obtain prior narcotics search warrants that have led to the arrest of narcotic traffickers and the seizure of narcotics, weapons, property, and US Currency.
>
> Within the last 72 hours, a confidential reliable informant (CRI) was in 2437 15th Avenue South.  2437 15th Avenue South is a duplex with the address clearly marked above the doors.  The CRI said that an unidentified black male wearing a black shirt and white shoes and a hoodie was in possession of a quantity of crack cocaine and a handgun.
>
> Your affiant in the last 72 hours has also set up stationary surveillance and observed the CRI coming in and out of 2437 15th Avenue South.  Your affiant also observed a black male matching the description above enter 2437 15th Avenue South, Minneapolis.
>
> Based on the above information your affiant believes there is probable cause that Cocaine and weapons are being stored and or distributed from 2437 15th Avenue South, and the detached garage from the residence.  Your affiant further asks permission from the courts to enter this dwelling and search the dwelling foran [sic] unidentified black male wearing a black shirt and white shoes and a hoodie, for Cocaine, handguns, and other items listed on the search warrant, and any other contraband that may be found.

(Government Ex. 1 at 2.)  Based on this information, Deputy Bean obtained a search warrant for the duplex, a detached garage, and the unidentified black male.

While Deputy Bean was applying for the search warrant, other members of law enforcement were maintaining surveillance on the duplex.  After the warrant had been signed, the CRI sent Deputy Bean a text message from inside the duplex indicating that the unidentified black male would be arriving in a white car.  Officers then observed a man matching the description of the unidentified black male arrive at the duplex in a white car.  He went to the trunk to retrieve a white purse and then entered the duplex through the same door used by the CRI.

Prior to the execution of the search warrant, Deputy Bean received word from other officers that the unidentified black male was leaving the residence.  Deputy Bean told another officer to follow the suspect and execute a traffic stop based on the search warrant.  During the stop, the unidentified black male was identified as Thomas.  The officers searched him and found cash and keys to the duplex.  Thomas was placed under arrest.

Since the duplex had two units, law enforcement sought confirmation from the CRI that they had a search warrant for the correct unit.  The CRI walked out of the duplex and stood under the address for the correct unit.  Then, law enforcement text-messaged the address number to the CRI to confirm the correct address.  At this time, law enforcement did not know that the two exterior front doors lead to a common porch, which led to separate interior front doors for the two units.  In other words, nothing

prevented a person from entering the exterior front door for the lower duplex, and then using the interior front door for the upper duplex.

Before Deputy Bean arrived with the search warrant, another person in the duplex asked the CRI to leave. After leaving, the CRI informed Deputy Bean that the unidentified black male had been in possession of a handgun and crack cocaine when he had entered the unit.

Law enforcement then searched the duplex unit named in the warrant. The officers discovered a handgun and narcotics in a basement stairwell at the back of the duplex. The stairwell and basement are shared between the two duplex units. After the search warrant had been executed, Deputy Bean returned to the Third Precinct to attempt to interview Thomas. After being advised of his rights under *Miranda*, Thomas requested a lawyer. While Thomas was being transported to jail, he told law enforcement that he would make sure that any witnesses against him would not make it to the stand to testify.

## ANALYSIS

**I.    THE WARRANT EXECUTED ON APRIL 30, 2008**

    **A.    Sufficiency of the Warrant Application**

Thomas first argues that the application filed in support of the April 30, 2008, search warrant did not supply probable cause. The task of a magistrate judge issuing a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis

of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." *Id.* (alteration in original) (internal quotations omitted). Because "reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause," courts are to give "great deference" to a magistrate judge's determination. *United States v. Leon*, 468 U.S. 897, 914 (1984).

Even if a warrant lacks probable cause, courts must consider the good-faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984). "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (internal quotation marks omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (internal quotation marks omitted).

In support of his challenge to the warrant application, Thomas points to a number of alleged factual gaps in Deputy Bean's affidavit. In summary, Thomas argues that (1) the affidavit does not clearly state that all of the CRI references refer to the same CRI; (2) while the affidavit states that the CRI saw Thomas with drugs, it does not state that the CRI saw him with drugs in the residence where the search occurred, and does not otherwise tie Thomas to the 15th Avenue Duplex; and (3) the affidavit does not give a quantity of crack observed by the CRI or otherwise elaborate on the CRI's encounter with Thomas.

Identical arguments were rejected by the Magistrate Judge, and this Court agrees that they do not constitute an adequate challenge to the April 30 search. As set forth above, this Court's role is simply to "make a practical, common-sense decision" about whether there is a "fair probability" that officers will discover contraband. *See Gates*, 462 U.S. at 238. That guidance is not consistent with the degree of textual parsing suggested by Thomas. While the affidavit does not explicitly state that it is referring to the same CRI in every paragraph, there is nothing that clearly suggests otherwise. In addition, the fact that the affidavit states the pedigree of just one CRI strongly implies that it refers to the same CRI throughout the document. Similarly, while the affidavit does not explicitly state that Thomas was seen with drugs inside the duplex, that is clearly implied by the affidavit as a whole. Finally, Thomas has not pointed to – and this Court is not aware of – any authorities indicating that an officer must provide a drug quantity in order to obtain a search warrant.

In short, the search warrant application indicated that a CRI with an established track record had (1) identified the 15th Avenue Duplex as a location where drug and gun trafficking was occurring and (2) provided specific information about Thomas's appearance and activities that was corroborated by the officers observations. That information established more than a fair probability that drugs would be found in the duplex and on Thomas's person. Accordingly, the Court adopts the Magistrate Judge's recommendation that Thomas's challenge to the April 30, 2008, warrant be denied.

### B.     *Franks* Challenge

Thomas also argues that Deputy Bean intentionally omitted several critical facts from his affidavit, including (1) the fact that the CRI was being to paid to inform, had a felony record, and was a crack cocaine user; (2) additional details about the duplex, including the fact that it included more than one unit; and (3) the fact that he had no previous information about activities at the duplex and that the CRI had not had prior dealings with Thomas.

"Under *Franks* [*v. Delaware*, 438 U.S. 154 (1978)] and its progeny, a defendant may challenge a search warrant on the grounds that the probable cause determination relied on an affidavit containing false statements or omissions made knowingly and intentionally or with reckless disregard for the truth." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). "To obtain a *Franks* hearing a defendant must make a substantial preliminary showing that there was an intentional or reckless false statement or omission which was necessary to the finding of probable cause, a requirement which is

not easily met." *Id.* (internal quotation marks omitted). "Thus, to prevail on a *Franks* claim the defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his warrant affidavit." *Id.* "The defendant must then show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *Id.*

The Court agrees with the Magistrate Judge that Thomas's allegations fail to meet this standard. As to Thomas's allegations concerning the reliability of the CRI, the affidavit indicated that the CRI had provided reliable information on several prior occasions. In short, there would have been no need for the issuing magistrate judge to rely on mere circumstantial concerns in assessing the CRI's truthfulness because the magistrate judge was able to consider the CRI's actual performance. As to the details concerning the duplex, it appears as if there was indeed some confusion regarding the precise structure of the building. However, the officers undisputedly searched the unit that was specified in the warrant. In those circumstances, it is unclear what additional information Thomas believes the affidavit should have included, or how any further information would have impacted the issuing magistrate judge's probable cause determination. Finally, the government was not required to expressly state that it did not have *additional* incriminating information concerning either Thomas or the duplex. Accordingly, this Court agrees with the Magistrate Judge that Thomas has not made a sufficient preliminary showing to necessitate a *Franks* hearing.

### C. Evidence Discovered in the Stairwell

Thomas also argues that the handgun and cocaine base found in the basement stairwell exceeded the scope of the officers' warrant. Even assuming this is true, however, "[e]vidence seized even through a deficient warrant is still admissible if officers executing the warrant were objectively reasonable in relying on it." *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999). In *McCaster*, the Eighth Circuit applied this principle to facts nearly identical to those at issue here. There, a defendant challenged the seizure of evidence from a "hall closet in a common area at the back of [a] duplex." *Id*. at 932. The court rejected this challenge, concluding that "the close proximity of the area to [the defendant's] living quarters and its enclosure within the duplex unit supports the finding that it was reasonable for the officers to believe that the area fell within the scope of the warrant." *Id*. at 933. Even if the warrant at issue here did not technically cover the full area of the search, the officers' search of a stairwell leading to a shared basement – all enclosed within the duplex where the search occurred – was at least as reasonable as the search in *McCaster*. Accordingly, the Court denies Thomas's motion to the extent that he argues that the officers exceeded the scope of the warrant.

## II. THE WARRANT EXECUTED ON SEPTEMBER 12, 2007

Thomas also argues that the Court should suppress the fruits of the search performed on September 12, 2007. Thomas first argues that the materials submitted in

the September 12 warrant application did not provide adequate information concerning the presence of drugs in the 22nd Street Apartment.

This Court agrees with the Magistrate Judge that the information in the warrant application was sufficient. That application indicated that a CRI had stated "that narcotics have been observed within a front bedroom . . . of the [22nd Street Apartment]"; and "that Thomas brags about storing narcotics and proceeds from narcotic sales at this location." (Government Ex. 2.) While Thomas objects to the fact that the application was not more specific about how and when this information was acquired, the application also indicates that the officers corroborated aspects of the CRI's information immediately before seeking the warrant. (*Id*.) The officers observed Thomas arriving at the apartment that the CRI had identified in the car that the CRI had identified, and saw him transporting crack cocaine in the manner that the CRI had predicted. In those circumstances, the officers had good reason to believe that the CRI was also correct that Thomas was arriving at the 22nd Street Apartment to engage in drug trafficking, and probable cause to believe that contraband would be discovered inside.

Thomas also challenges the fruits of the September 12, 2007, search on the grounds that the officers lacked probable cause to arrest him. Thomas argues that references to this arrest tainted the September 12 warrant application. "An officer has probable cause to make a warrantless arrest when circumstances would lead a reasonable person to believe a defendant has committed or is in the midst of committing an offense." *United States v. Dembry*, 535 F.3d 798, 800 (8th Cir. 2008). Here, the events described above gave the officers adequate reason to believe that Thomas was committing a crime.

Most significantly, Officer House believed that he had seen Thomas swallow crack cocaine. In those circumstances, the Court agrees with the Magistrate Judge that Thomas's arrest was supported by probable cause, and that there was nothing improper about describing the events preceding that arrest on the warrant application.

### III.  THE WARRANT EXECUTED ON JANUARY 3, 2008

Thomas also briefly argues that the warrant executed on January 3, 2008, was not supported by probable cause. The application supporting this warrant, however, described three separate drug deals observed by officers. The officers observed Thomas leave the 22nd Street Apartment before two of the deals, and return to the apartment after all three. In those circumstances, the officers had more than sufficient cause to believe that drugs would be found in the apartment.

Finally, Thomas raises a *Franks* challenge to the January 3, 2008, warrant application, because the application fails to expressly state that the search executed on September 24, 2007, at the apartment did not uncover evidence of narcotics trafficking. The warrant application states:

> Your affiant knows "Shorty" to be Dantzler Lemont Thomas . . . . Your affiant identified this male because of a previous search warrant executed at this address by your affiant. Your affiant executed a narcotics search warrant on 9/24/2007 at this address after a controlled buy was made from Dantzler Lemont Thomas. Your affiant also has knowledge of another search warrant that was executed at this address on 9/13/2007. During that search warrant, narcotics, a firearm and a large amount of cash was recovered.

(Government Ex. 2.) In contrast to the description of the search executed on September 13, the application does not describe any evidence recovered on

September 24. In other words, the outcome of the September 24 search was implied. In any event, the substantial additional information included in the warrant application – described at length above – concerned events far more recent than September 24. That information clearly would have supplied probable cause for a search of the 22nd Street Apartment even if the results of the September 24 search had been spelled out more explicitly. Accordingly, the Court agrees with the Magistrate Judge that Thomas's challenge to the search executed on January 3, 2008, should be denied.[2]

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** Thomas's objections [Docket No. 41] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 40]. **IT IS HEREBY ORDERED** that:

1. Thomas's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 24] is **DENIED**.

2. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 25] is **DENIED**.

DATED: October 8, 2008
at Minneapolis, Minnesota.

          s/ John R. Tunheim
          JOHN R. TUNHEIM
          United States District Judge

---

[2] As to Thomas's Motion to Suppress Statements, Admissions, and Answers, he offers no arguments in support of this motion other than those discussed above. Accordingly, the Court adopts the Magistrate Judge's recommendation to deny that motion as well.